IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JENNIFER ANN CHANCE,

       Plaintiff,

vs.                              CASE NO. 1:20-cv-254-AW-GRJ

DR. KILOLO KIJAKAZI,
Acting Commissioner
of Social Security[1],

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security Disability Insurance Benefits ("SSDI"). The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 14, 17, 18. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff's application alleged disability beginning May 31, 2017, due to a neck injury, depression, anxiety, insomnia, and bilateral nerve

---

[1] In July 2021, Dr. Kilolo Kijakazi was appointed Acting Commissioner of Social Security.  The **Clerk** must correct the docket accordingly.

pain/damage.  R. 233-44.[2]   Her application was denied initially and upon

reconsideration.  R. 110-12; 118-19.  Following a hearing, an administrative

law judge ("ALJ") issued an unfavorable decision, finding that Plaintiff was

capable of performing a reduced range of work at the light exertional level.

R. 15-26.  The Appeals Council denied review.  R. 1-3.  Plaintiff then filed

the instant appeal.  ECF No. 1.  Plaintiff generally argues that substantial

evidence does not support the ALJ's decision that she can work fulltime,

and she specifically points to alleged errors in the ALJ's credibility

assessment, which Plaintiff claims were based on misstatements of her

hearing testimony.  ECF No. 17.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence

is more than a scintilla, *i.e.*, the evidence must do more than merely create

a suspicion of the existence of a fact and must include such relevant

evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

---

[2] Plaintiff's onset date was based on the date that her prior application was denied following a hearing and Appeals Council review.  R. 242.

*Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

> *Id.* (internal citations omitted).

### III.  SUMMARY OF THE RECORD

#### A.  ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of cervical degenerative disc disease, status post anterior cervical discectomy and fusion (ACDF) C6-7; and depression/anxiety.  R. 17.  The ALJ found that Plaintiff's alleged migraines were non-severe because they caused no more than minimal limitations in her ability to perform basic work-related functions since they occurred only twice monthly and were treated with Advil.  R. 18.  Plaintiff does not have an impairment or combination of impairments that meets or equals the listings.  *Id.*  The ALJ determined that Plaintiff has the RFC for light work, with additional exertional, postural, and mental limitations. R. 19-20.  The ALJ concluded that Plaintiff's subjective complaints regarding the limiting effects of her impairments were not entirely consistent with the objective medical evidence and other evidence of record.  R. 21.

The ALJ found that Plaintiff could not perform her past relevant work as an office manager because the demands of such work exceeded her assessed RFC.  *Id.* at 24.  Based upon the testimony of a VE, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform, such as Labeler, Ticket seller, and Mailroom Clerk.  R. 25-26.  The ALJ therefore found that Plaintiff was not disabled.  R. 26.

### B.  Medical and Opinion Evidence

Plaintiff underwent ACDF surgery at level C6-7 in May 2014. Relevant to her alleged onset date, Plaintiff treated with Florida Pain and Rehabilitation beginning in May 2017, reporting pain in her neck and arm and rating her pain level as 6 out of 10.  Plaintiff wore a cervical collar, and examination revealed cervical muscle spasms, limited range of motion, and trigger points in the right scapula and trapezius. There was tenderness over the left buttock with deep palpation. No abnormal findings of the lower extremities were noted. Plaintiff's gait was normal and she was neurologically intact. Mental status findings indicated an appropriate affect; pain behavior was exhibited. Plaintiff was diagnosed with cervicalgia, cervical spondylosis, myofascial pain, and shoulder impingement syndrome. She was continued on controlled medication therapy for chronic pain, consisting of Neurontin, cyclobenzaprine, Oxycodone, Vyvanse, Prozac, Rexulti, ibuprofen, Adderall, and Klonopin.  R. 571-92; 743-896.

In June 2017, Plaintiff had no new complaints, rating her pain level at 5, and she denied medication changes. She underwent trigger point

injection therapy to the cervical paravertebral and upper trapezius areas. R.
571-76.

Plaintiff's clinical findings remained consistent from July to September
2017.  R. 547, 553, 565.  Plaintiff denied new pain complaints and her
treatment with prescribed medication remained unchanged. Her pain level
ranged from 4 to 6 out of 10. The progress notes dated November 2017
disclose that Plaintiff would try to decrease her use of Oxycodone and she
was tapered down on Klonopin and off Adderall.  R. 818.  In January 2018,
she was advised to continue home therapy exercises.  *Id.*

Plaintiff saw Matthew Odom, M.D., at the Gainesville Afterhours
Clinic in March 2018, complaining of headache and cough.  Physical
examination findings were unremarkable. She was assessed as having a
stable mood, good concentration, and no suicidal or homicidal ideation.
Plaintiff was diagnosed with an upper respiratory infection, ADD, and
depression.  She was prescribed medication for the infection as well as
Maxalt, Ambien, Vyvanse, Adderall, Lexapro, and Klonopin.  R. 728-35;
736-38.

Further progress notes from Florida Pain and Rehabilitation from
February to September 2018 reflect that Plaintiff had tapered off of
Oxycodone and was taking Tylenol #3 for severe pain.  She was using

Klonopin as needed.  Plaintiff underwent additional trigger point injections

and reported minimal relief.  Plaintiff reported that hydrocodone was

helpful, and she was continued on medication and home therapy exercises.

Her physical and mental status findings were essentially unchanged since

May 2017.  R. 739-1010.  There is no medical evidence in the record after

September 2018.

Based on his review of this evidence, the ALJ summarized:[3]

Overall, the objective medical evidence establishes the claimant's
history of cervical fusion surgery in May 2014 and cervical MRI
findings consistent with post-surgical changes of ACDF at C6-7,
minimal small disc protrusion at C4-5 and C5-6 with mild narrowing of
the thecal sac at C4-5, mild left-sided hypertrophy, and mild left-sided
neural foraminal narrowing in October 2014. However, there was no
evidence of impingement and no additional radiographic studies since
the alleged onset date May 30, 2017. Furthermore, the clinical
findings by the primary treating source at Florida Pain and
Rehabilitation from May 2017 through September 2018 fail to show
any changes, appearing verbatim and duplicative. Notably, there are
no updated records from this source after September 2018.
Nonetheless, the treatment notes from this source show that the
claimant remained neurologically intact without evidence of motor,
sensory or reflex deficits and her gait was normal. Notably, there
were no EMG/NC studies obtained since the alleged onset date.
Likewise, the claimant's treatment remained conservative with
prescribed medications and occasional trigger point injections to the
cervical spine and trapezius area, resulting in improvement in
symptoms. Furthermore, the progress notes consistently show that
the claimant found her medications helpful and she did not request
medication changes due to ineffectiveness. Notably, her opiate
medication was ceased due to inconsistent UDTs. She has not

---

[3] Plaintiff does not dispute the accuracy of the ALJ's summary of the medical evidence.

required additional surgery or physical therapy since her alleged onset date. . . .

In terms of her mental impairments, the objective mental status findings were limited during the period at issue; however, her affect remained appropriate throughout her course of treatment with Florida Pain and Rehabilitation. In addition, the records from Dr. Odom dated March 2018 indicate that the claimant's mood was stable, her concentration was good, and she had no suicidal or homicidal ideation. There was evidence of treatment with medications for her mental symptoms; however, the claimant has not required inpatient psychiatric hospitalization, counseling or treatment with a mental health professional during the period at issue.

R. 22-23.

With respect to opinion evidence, the ALJ noted that a State agency medical consultant concluded that while Plaintiff's impairments were severe there was insufficient evidence to evaluate her claim.  The ALJ found this opinion non-persuasive, as the record contained medical evidence through September 2018, more than a year since Plaintiff's alleged onset date.  R. 24; 96-108.

State agency psychologists who reviewed Plaintiff's records found that her mental impairments would cause no more than moderate limitations in concentration, persistence, or pace.  R. 82-94; 96-108. The ALJ found this evidence persuasive, as it was consistent with the generally benign mental status findings and conservative mental health treatment.  R. 24.

### C. Hearing Testimony

Plaintiff was 49 years old at the time of the hearing.  She testified that she last worked a week prior to the hearing, when she helped a friend who has a cleaning company.  Plaintiff testified that she worked one day per week for three weeks, for four hours per day, but had not been able to do a good job.  R. 35-36.

Plaintiff testified that she stopped working in 2014 due to pain in her back and neck that prevented her from sitting at her desk.  She had surgery, but it was unsuccessful.  Her treatment has mainly consisted of pain management with medication.  Plaintiff testified that she has "severe migraines", but she does not take special medication because she "tried everything, but nothing relieves it."  She takes Advil for migraines, which she has 2-3 times per month for 24 to 48 hours.  R. 37-39, 41-42.

Plaintiff testified that she can lift her 50-pound daughter but she can't carry her for any period of time.  She could pick her daughter up three or four times in an eight-hour day.  She can sit for four hours before having to get up, but has no problems standing and walking.  She can lift 10 pounds, but repetitive lifting causes spasms in her neck and upper back that are so severe she has to lay down for 30 minutes.  R. 40, 44-45.

Plaintiff testified that she needs help at home, such as with grocery shopping. She testified that she is sometimes unable to go grocery shopping because her pain causes major depression. She was seeing a psychiatrist, but he retired. She takes daily medication for depression. She testified that depression keeps her from working because it is difficult to leave the house sometimes. Pain and depression cause her to cry two to three times per week. Crying episodes last from 15 minutes to 8 hours. R. 40-41, 48.

With respect to her daily activities, Plaintiff explained that she cannot do much. She takes her daughter to school, and then tries "to get something done around the house." Most of her day is spent "on ice and laying down." She does as much cooking and housework as she can. Her mother and friend help her with cleaning and laundry, and perform 85% of the work. She is able to watch TV and read. She does not attend any social group activities. R. 42-43.

The ALJ posed a hypothetical to the VE that assumed an individual of the same age and education as Plaintiff with the RFC for light work with certain postural, exertional, and mental limitations, including a limitation to performing work that required only simple, routine tasks, with the ability to maintain concentration, persistence and pace for up to two-hour segments,

in a stable environment, with simple work-related decisions.  R. 50.  The

VE testified that such a person could not perform Plaintiff's past work, but

could perform other unskilled work that exists in significant numbers in the

national economy including Labeler, Ticket Seller, and Mailroom Clerk.  *Id.*

at 50-51.  With the additional limitation that the person would be off-task at

least 20 percent of the workday due to a combination of symptoms

including pain, or was unable to maintain regular attendance, the VE

testified that the person would be unemployable.  R. 51-52.

## IV.  DISCUSSION

### A.  ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ misstated her hearing testimony in

assessing her subjective complaints, and that her testimony "clearly shows

she is not capable of sustaining any full-time job over time."  ECF No. 17 at

14-17.  Plaintiff contends that her uncontradicted testimony showed that

she is unable to care for her daughter, herself, or her home, and that her

mother and friend provide 80 to 85% of all necessary daily activities.

Plaintiff specifically takes issue with the ALJ's reference to her testimony

that she can lift her 50-pound daughter.  She also asserts that it "should be

obvious that a person who suffers from migraine headaches . . . several

times a month, obviously needs help and assistance" caring for a child. *Id.*

at 15.

In assessing Plaintiff's subjective complaints, the ALJ explained:

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activities.

R. 20.

The ALJ then summarized Plaintiff's hearing testimony, noting that

Plaintiff testified she could lift her 50-pound daughter, could sit for four

hours and has no problems standing or walking, and has difficulty leaving

the house due to depression.  The ALJ noted Plaintiff's testimony that she

takes her daughter to school, does things around the house, spends much

of the day lying down, and does household chores as much as she can but

requires substantial assistance from others.  R. 20-21.

The ALJ then explained:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 21.

As support for this conclusion, the ALJ pointed to the medical evidence summarized above, which reflects overall conservative treatment for her cervical impairment, consisting primarily of medication and trigger point injections.  Plaintiff has not required additional surgery or physical therapy since her alleged onset date.  Her mental health treatment consisted of medication, and she has not required hospitalization, counseling, or treatment with a mental health professional.  In view of the objective medical records, the ALJ concluded that Plaintiff was capable of performing a reduced range of light work with appropriate exertional and mental restrictions.  R. 23.

To establish disability on the basis of subjective complaints, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to

the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite

objective medical evidence that confirmed the severity of the alleged pain .

. . or that the objectively determined medical conditions are of such a

severity that they can be reasonably expected to give rise to the alleged

pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580,

584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an

impairment affects Plaintiff's ability to work, and not on the impairment

itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547

(11th Cir. 1986) (severity of impairments must be measured in terms of

their effect on the ability to work, not from purely medical standards of

bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints consistent with the

framework established under Social Security Regulation ("SSR") 16-3p.

*See* R. 17.  As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned
> the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463
> (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility"
> from its sub-regulatory policy because the Social Security
> Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p
> clarified that "subjective symptom evaluation is not an examination of an
> individual's character" and that a two-step evaluation process must be
> used. *Id.* Step one is to determine whether the individual has a medically
> determinable impairment that could reasonably be expected to produce
> the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the

intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. *Id.* at 49,464-66. The Commission stated:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . with a title XVI disability claim.

*Id.* at 49,463.  *Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx.

700, 702-03 (11th Cir. 2018).[4]

The issue is not, as Plaintiff contends, whether her hearing testimony

is "uncontradicted".  The issue is whether the ALJ correctly evaluated her

subjective symptoms in light of the totality of the evidence in the record.

On this record, the undersigned concludes that the ALJ properly evaluated

---

[4] In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged.  The decision under review in this case was made on May 30, 2017, and therefore SSR 16-3p is applicable.  R. 24; *See Contreras-Zambrano*, 724 Fed.Appx. at 702-03.

Plaintiff's subjective complaints of pain consistent with Agency rules and that the ALJ's RFC, finding that Plaintiff is capable of a reduced range of light work, is supported by substantial evidence.  Plaintiff complains that the ALJ referred to her ability to lift her daughter, but the ALJ's statements are wholly consistent with her testimony that she could pick her daughter up several times a day.  In any event, the ALJ did not conclude that she had the capacity to lift 50 pounds in the workplace.  The ALJ limited Plaintiff to work at the light exertional level and Plaintiff has failed to show that the ALJ's finding is contradicted by the objective medical evidence in the record.

Plaintiff further contends that she experiences disabling migraines, but she did not claim disability on the basis of migraine and she does not directly dispute the ALJ's finding that migraine is a non-severe impairment, occurring two or three times per month and treated only with Advil.  As the ALJ found, Plaintiff's medical records do not support a conclusion that her migraines are disabling.

In sum, Plaintiff has failed to establish that the ALJ erred in evaluating her subjective complaints, or that the RFC formulated by the ALJ does not account for all of her severe impairments, as supported by her medical records.

## V.  RECOMMENDATION

It is respectfully **RECOMMENDED** that the decision of the

Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, this 9th day of November

2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.